**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JAMES HAYWARD LESTER                    CIVIL ACTION NO. 15-2008

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

CADDO PARISH, ET AL.                    MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is Defendant Caddo Parish's Federal Rule of Civil Procedure
12(b)(6) Motion to Dismiss (Record Document 44) Plaintiff James Hayward Lester's
("Lester") allegations in his Complaint (Record Document 1) and Amended Complaints
(Record Documents 33 and 42) alleging federal constitutional violations under 42 U.S.C.
§ 1983, Louisiana constitutional violations, and state tort claims against Caddo Parish
and other Defendants. For the reasons which follow, Caddo Parish's Rule 12(b)(6) Motion
to Dismiss is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Lester is a resident of Tarrant County, Texas, but for many years has been active
as a commercial contractor in Shreveport. See Record Document 1 at 1-4. On February
28, 2003, Lester first filed his application for a Louisiana commercial contractor's license
in Shreveport. See id. at ¶ 13. This application included a statement that Lester had never
been convicted of a felony or misdemeanor; in fact, Lester had previously been convicted
of a misdemeanor in Texas. See id. at ¶ 25; see also State v. Lester, 165 So.3d 1181 (La.
App. 2 Cir. 05/20/16). Lester received a valid commercial contractor license on May 15,
2003. See Record Document 1 at ¶ 14. He continually reapplied for such a license and
held a valid license during all times relevant to this case. See id. at ¶ 15.

Part of Lester's contracting work involved making repairs to houses of people who applied for grants from the City of Shreveport's Bureau of Housing and Business Development. See id. at ¶ 16-17. Lester would submit a bid for the requested work and, if he had the lowest bid, he would receive the contract to perform the work. See id. In October 2007, Lester was awarded the contract to perform work on Ms. Bessie Lee Broadway's ("Broadway") home. See id. On January 14, 2008, a change order for the original contract was approved, allowing Lester to receive an additional fee of $5,100 for additional work. See id. at ¶ 21. On January 24, 2008, Lester, Broadway, and City Inspector Daniel Lacour ("Lacour") executed a "Contractor's Pay-Out Request" to pay Lester $17,900 for work that Lester had completed. See id. at ¶ 20.

On March 8, 2008, Lacour and Lester orally agreed to a second change order which would allow Lester to repair and service the furnace in the home rather than replace it entirely and use the money that would have paid for a new furnace to replace a deteriorated wall. See id. at ¶ 22. Lacour later admitted that he forgot to complete a physical change order for these changes. See id. On April 1, 2008, Lester, Broadway, and Lacour executed a second "Contractor's Pay-Out Request" to pay Lester $7,090 for the remainder of the work that Lester had completed. See id. at ¶ 23.

On March 19, 2009, Sergeant Jason Turner ("Turner") of the Louisiana State Police and Sergeant Jay Long ("Long") and Corporal John May ("May") of the Caddo Parish Sheriff's Department began an investigation into Lester's activities as a contractor. See id. at ¶ 24. During the investigation, Turner found Lester's previous misdemeanor conviction and received documents related to the repairs Lester completed on Broadway's house. See id. at ¶¶ 24-27. On July 15, 2009, Turner obtained a warrant for

Lester's arrest for Filing or Maintaining False Public Records by submitting renewal applications for his contractor's license without correcting the statement that he had not been convicted of a previous misdemeanor. See id. at ¶ 28.

Turner, Long, and May continued their investigation of Lester by inspecting Broadway's property with another inspector, Timothy Weaver ("Weaver"). See id. at ¶ 29. Weaver later sent a letter to Turner stating that he found that Lester had failed to install as much insulation in Broadway's attic as the contract had called for. See id. at ¶ at 30. On August 29, Turner obtained an arrest warrant for Lester and Lacour's arrest for Home Improvement Fraud. See id. at ¶ 31. In interviews with the officers after the arrest warrants were issued but prior to his actual arrest, Lacour admitted that he had failed to complete a second change order for Broadway's house, and he stated that if the officers had found something wrong with the repairs to the house, "its my fault, nobody elses . . . I should've did my job right (sic)." See id. at ¶ 32.

On August 31, 2009, Lester and six other African American contractors and inspectors, including Lacour, were arrested. See id. at ¶ 34. That day, a press conference "featuring Caddo Parish Sheriff Steve Prator and Caddo Parish District Attorney Charles Scott" was held on the steps of the Caddo Parish courthouse. See id. at ¶ 35. At the press conference, Prator announced a $1.5 million scandal involving the arrestees to defraud the City of Shreveport, a statement that Lester alleges was made "falsely and with the full intention to mislead the public." See id. at ¶ 35. On November 18, 2009, Assistant District Attorney Lea Hall, Jr. ("Hall") filed the first Bill of Information against Lester, charging him with Home Improvement Fraud and Filing or Maintaining False Public Records. See id. at ¶ 36.

On May 25, 2010, the trial of one of the other contractors, James Alex III ("Alex"), resulted in a mistrial. See id. at ¶ 37. According to Hall's statements to a reporter after the trial, the parties had made a joint motion for mistrial after they discovered that the jury instructions did not reflect the fact that Alex was charged with Home Improvement Fraud that allegedly occurred under an old statute and an amended statute. See id. at ¶ 37. On July 8, 2010, Lester filed a Motion to Quash the Information in his case on the basis of statutory affirmative defenses to Home Improvement Fraud. See id. at ¶ 38. The trial judge held a hearing on the motion, but reserved a ruling until after trial. See id. at ¶ 39. On September 28, 2011, Lester provided the State with photographic evidence that allegedly proved that he was innocent of the Home Improvement Fraud charge. See id. at ¶ 40. On February 14, 2012, a second Bill of Information was filed against Lester which dropped the Home Improvement Fraud charge and included only the Filing or Maintaining False Public Records charge. See id. at ¶ 41.

On April 9, 2014, Lester filed a Motion to Quash the Amended Information, which the trial court granted. See id. at ¶ 42-43. On July 4, 2014, Sheriff Prator gave an interview to the editor of local newspaper The Inquisitor in which he stated that he was frustrated with the fact that Lester had not been prosecuted for Home Improvement Fraud and stating that Lester had committed theft and abuse of Broadway. See id. at ¶ 44. That same day, acting District Attorney Dale Cox[1] ("Cox") sent an email to the editor of The Inquisitor stating why the Home Improvement Fraud charge against Lester was dropped and that the State would be appealing the trial court's decision to quash the Filing or

---

[1] Former co-defendant Charles R. Scott passed away on April 22, 2015, and First Assistant District Attorney Cox replaced Scott as acting District Attorney. See Record Document 20-1.

Maintaining a False Public Record charge against Lester. See id. at ¶ 45. On May 20, 2015, the Louisiana Second Circuit Court of Appeal affirmed the trial court's decision to quash the Filing or Maintaining False Public Records charge against Lester on the basis of prescription. See id. at ¶ 51; see also Lester, 165 So.3d 1181 (La. App. 2 Cir. 05/20/16).

Lester filed this suit against Hall, Scott, Cox, Turner, Long, and May on July 2, 2015. See Record Document 1. On December 1, 2015, Lester filed an Amended Complaint adding Caddo Parish as a defendant in the instant action. See Record Document 33. On December 14, 2015, Lester filed a second Amended Complaint adding more allegations against Defendants. See Record Document 42. On September 29, 2016, the Court granted the Rule 12(b)(6) Motions to Dismiss by Hall and Scott. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 (W.D. La. 2016). On October 26, 2016, the Court granted in part and denied in part a Rule 12(b)(6) Motion to Dismiss by Cox. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 148414 (W.D. La. 2016). Caddo Parish filed the instant Rule 12(b)(6) Motion to Dismiss on January 29, 2016, and the Motion is fully briefed. See Record Documents 44 and 48.

## LAW AND ANALYSIS

### I.      Legal Standards.

### A. Pleading Standards and the Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard,

"factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-556. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Iqbal, 556 U.S. at 678 (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, Texas, 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

### B. Section 1983/ Monell Claims against Local Governments

In addition to suits against persons acting under the color of state law in their individual capacities, 42 U.S.C. § 1983 also allows for suits against local government

entities themselves. In <u>Monell v. Dept. of Social Serv.</u>, 436 U.S. 658 (1978), the Supreme Court held that municipalities and local government agencies cannot be held liable for constitutional torts under § 1983 under a theory of respondeat superior, <u>id.</u>, 436 U.S. at 691, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id.</u>, 436 U.S. at 694. In other words, merely establishing a constitutional violation by an employee of a local government entity is not enough to impose liability upon that entity under § 1983.

Rather, to succeed on a <u>Monell</u> claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. <u>McGregory v. City of Jackson</u>, 335 Fed. Appx. 446, 448, 2009 WL 1833958, *2 (5th Cir. 2009), *citing* <u>Rivera v. Houston Indep. Sch. Dist.</u>, 349 F.3d 244, 247-49 (5th Cir. 2003). Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials whose acts may fairly be said to be those of the government entity itself. <u>Bryan Cty. Comm'rs v. Brown</u>, 520 U.S. 397 (1997).

An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," <u>Id.</u>, 520 U.S. at 417 (Souter, J., dissenting); (2) "where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself," <u>Id.</u>, 520 U.S. at 417-18 (Souter, J., dissenting); and (3) "even where the policymaker has failed to act

affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker . . . can reasonably be said to have been deliberately indifferent to the need.'" Id. 520 U.S. at 419 (Souter, J., dissenting) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

## II.   Analysis.

Lester's first Amended Complaint states that it was his "goal to sue the municipal entity that is responsible for the District Attorney for Caddo Parish . . . and the Sheriff for Caddo Parish," and that he has added Caddo Parish as a defendant because he thinks it is the proper entity to sue. Record Document 33 at ¶ 5. Caddo Parish's Motion to Dismiss must be granted because it is not the municipal entity that is responsible for any of the allegedly unconstitutional actions or policies that Lester complains of in the instant action.

When deciding whether a plaintiff has sued the proper defendant in a § 1983 action including a Monell claim, federal courts must look to state law to determine whether the defendant had final policymaking authority. St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) ("the identification of policymaking officials is a question of state law"). Thus, the Court must look to the structure of Louisiana's local government to determine whether Caddo Parish is the proper entity to be sued in the instant action.

Under state law, Caddo Parish is an entity that is independent from the offices of District Attorney and Sheriff. The Louisiana Constitution contains separate sections for each of these three entities. See La. Const. Art. V, § 26 (district attorneys), § 27(sheriffs), and Art. VI, § 1 (parishes). A district attorney "shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand

jury in his district, and be the legal advisor to the grand jury." La. Const. Art. V, § 26; <u>see also</u> La. R.S. § 16:1. A sheriff "shall be the chief law enforcement officer in the parish, except as otherwise provided by this constitution, and shall execute court orders and process [and] he shall be the collector of state and parish ad valorem taxes and such other taxes and license fees as provided by law." <u>Id.</u> at § 27. Thus, the offices of district attorney and sheriff are distinct offices created under the Louisiana Constitution with specifically enumerated powers, and are therefore separate and independent from the parishes. See <u>Burge v. Par. of St. Tammany</u>, 187 F.3d 452, 469 (5th Cir. 1999) ("under the Louisiana Constitution and laws, a district attorney, like a sheriff, is virtually an autonomous local government official").

Caddo Parish, like all other parishes, exercises a variety of powers it has been granted by the Louisiana legislature in the parish, including but not limited to: (1) regulating the making and repairing of roads, bridges, and other transportation infrastructure; (2) regulating the clearing of the banks of rivers; (3) regulating the policing of taverns and retail liquor stores; and (4) levying taxes. <u>See</u> La. R.S. § 33:1236. However, as both state and federal courts in Louisiana have recognized, parishes do not have any authority or control over the separate constitutional offices of district attorney and sheriff or their employees. <u>See</u> <u>Burge</u>, 187 F.3d at 469; <u>see</u> <u>Kraft v. Lee</u>, 2006 U.S. Dist. LEXIS 84827 at *7-8 (E.D. La. 2006) (dismissing similar <u>Monell</u> claims against parish on basis that parish has no control over sheriff); <u>see</u> <u>Jenkins v. Jefferson Par. Sheriff's Office</u>, 402 So. 2d 669, 671 (La. 06/22/1981) ("no one but the sheriff can realistically be viewed as the employer of the deputies . . . the sheriff is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff").

The allegations in Lester's complaint contain nothing regarding the functions of Caddo Parish; rather, they all relate to the district attorney and his assistants, the sheriff and his deputies, and Louisiana State Police Sergeant Turner. <u>See</u> Record Documents 1, 33, and 42. As explained above, Caddo Parish has no control over the district attorney or the sheriff. Caddo Parish also has no control over an independent state executive branch agency like the Louisiana State Police, a sub-unit of the Louisiana Department of Public Safety and Corrections. <u>See</u> La. R.S. § 36:401, *et seq.* Because Caddo Parish has no policymaking authority over any of the other Defendants, it cannot be held liable under § 1983 and <u>Monell</u> for any allegedly unconstitutional official "policy" or "custom." <u>Monell</u>, 436 U.S. at 694. It is also not the proper party to sue for alleged violations of the Louisiana Constitution or torts by these defendants under Louisiana law. <u>See</u> <u>Jenkins</u>, 402 So. 2d at 671. Therefore all claims against Caddo Parish must be dismissed.

## CONCLUSION

Caddo Parish's Rule 12(b)(6) Motion to Dismiss (Record Document 44) is **GRANTED.** All of Lester's claims against Caddo Parish are hereby **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 30th day of March, 2017.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE