**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JAMES HAYWARD LESTER          CIVIL ACTION NO. 15-2008

VERSUS          JUDGE S. MAURICE HICKS, JR.

STEVE PRATOR, ET AL.          MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is Defendant, Sergeant Jason Turner's ("Turner") Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Record Document 11) Plaintiff James Hayward Lester's ("Lester") allegations in his Complaint (Record Document 1) and Amended Complaints (Record Documents 33 and 42) of federal constitutional violations under 42 U.S.C. § 1983, Louisiana constitutional violations, and torts under state law by Turner. For the reasons which follow, Turner's Rule 12(b)(6) Motion to Dismiss is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Lester is a resident of Tarrant County, Texas, but for many years has been active as a commercial contractor in Shreveport. See Record Document 1 at 1-4. On February 28, 2003, Lester first filed an application for a Louisiana commercial contractor's license in Shreveport. See id. at 4, ¶ 13. This application included a statement that Lester had never been convicted of a felony or misdemeanor; in fact, Lester had previously been convicted of a misdemeanor in Texas. See id. at 5, ¶ 25; see also State v. Lester, 165 So.3d 1181 (La. App. 2 Cir. 05/20/16). Lester received a valid Louisiana commercial contractor license on May 15, 2003. See Record Document

1 at 4, ¶ 14. He continually reapplied for such license and held a valid license during all times relevant to this case. See id. at 4, ¶ 15.

Part of Lester's contracting work involved making repairs to houses of residents who applied for grants from the City of Shreveport's Bureau of Housing and Business Development. See id. at 4, ¶¶ 16-17. Lester would submit a bid for the requested work and, if he had the lowest bid, he would receive the contract to perform the work. See id. In October 2007, Lester was awarded the contract to perform work on Ms. Bessie Lee Broadway's ("Broadway") home. See id. On January 14, 2008, a change order for the original contract was approved, allowing Lester to receive an additional fee of $5,100 for additional work. See id. at 4, ¶ 21. On January 24, 2008, Lester, Broadway, and City Inspector Daniel Lacour ("Lacour") executed a "Contractor's Pay-Out Request" to pay Lester $17,900 for work that Lester had completed. See id. at 4, ¶ 20.

On March 8, 2008, Lacour and Lester orally agreed to a second change order which would allow Lester to repair and service the furnace in the home rather than replace it entirely and use the money that would have paid for a new furnace to replace a deteriorated wall. See id. at 4-5, ¶ 22. Lacour later admitted that he forgot to complete a physical change order for these changes. See id. On April 1, 2008, Lester, Broadway, and Lacour executed a second "Contractor's Pay-Out Request" to pay Lester $7,090 for the remainder of the work that Lester had completed. See id. at 5, ¶ 23.

On March 19, 2009, Sergeant Turner of the Louisiana State Police and Sergeant Jay Long ("Long") and Corporal John May ("May") of the Caddo Parish Sheriff's Department began an investigation into Lester's activities as a contractor. See id. at 5, ¶ 24. During the investigation, Turner found Lester's previous misdemeanor conviction

and received documents related to the repairs Lester completed on Broadway's house. See id. at 5-6, ¶¶ 24-27. On July 15, 2009, Turner obtained a warrant for Lester's arrest for filing or maintaining false public records in violation of La. Rev. Stat. § 14:133 by submitting renewal applications for his contractor's license without correcting the statement that he had not been convicted of a previous misdemeanor. See id. at 6, ¶ 28.

Turner, Long, and May continued their investigation of Lester by inspecting Broadway's property with another inspector, Timothy Weaver ("Weaver"). See id. at 6, ¶ 29. Weaver later sent a letter to Turner stating that he found that Lester had failed to install as much insulation in Broadway's attic as the contract specified. See id. at 7, ¶ 30. On August 29, Turner obtained an arrest warrant for Lester and Lacour's arrest for home improvement fraud in violation of La. Rev. Stat. § 14:202.1. See id. at 7 ¶ 31. In interviews with the officers after the arrest warrants were issued but prior to his actual arrest, Lacour admitted that he had failed to complete a second change order for Broadway's house, and he stated that if the officers had found something wrong with the repairs to the house, "its my fault, nobody elses . . . I should've did my job right (sic)." See id. at 8, ¶ 32.

On August 31, 2009, Lester and six other African American contractors and inspectors, including Lacour, were arrested. See id. at 9, ¶ 34. That day, a press conference "featuring Caddo Parish Sheriff Steve Prator and Caddo Parish District Attorney Charles Scott" was held on the steps of the Caddo Parish courthouse. See id. at 9, ¶ 35. At the press conference, Prator announced a $1.5 million scandal involving the arrestees to defraud the City of Shreveport, a statement that Lester alleges was

made "falsely and with the full intention to mislead the public." <u>See id.</u> at 9, ¶ 35. On November 18, 2009, Assistant District Attorney Lea Hall, Jr. ("Hall") filed the first Bill of Information against Lester, charging him with home improvement fraud and filing or maintaining false public records. <u>See id.</u> at 10, ¶ 36.

On May 25, 2010, the trial of one of the other contractors, James Alex III ("Alex"), resulted in a mistrial. <u>See id.</u> at 10, ¶ 37. According to Hall's statements to a reporter after the trial, the parties had made a joint motion for mistrial after they discovered that the jury instructions did not reflect the fact that Alex was charged with home improvement fraud that allegedly occurred under an old statute and an amended statute. <u>See id.</u> at 10, ¶ 37. On July 8, 2010, Lester filed a Motion to Quash the Information in his case on the basis of statutory affirmative defenses to home improvement fraud. <u>See id.</u> at 11, ¶ 38. The trial judge held a hearing on the motion, but reserved a ruling until after trial. <u>See id.</u> at 11, ¶ 39. On September 28, 2011, Lester provided the State with photographic evidence that allegedly proved that he was innocent of the home improvement fraud charge. <u>See id.</u> at 11-12, ¶ 40. On February 14, 2012, a second Bill of Information was filed against Lester which dropped the home improvement fraud charge and included only the filing or maintaining false public records charge. <u>See id.</u> at 12, ¶ 41.

On April 9, 2014, Lester filed a Motion to Quash the Amended Information, which the trial court granted. <u>See id.</u> at 12, ¶¶ 42-43. On July 4, 2014, Sheriff Prator gave an interview to the editor of local newspaper *The Inquisitor* in which he stated that he was frustrated with the fact that Lester had not been prosecuted for home improvement fraud and stating that Lester had committed theft and abuse of Broadway. <u>See id.</u> at 12-

13, ¶ 44. That same day, acting District Attorney Dale Cox[1] ("Cox") sent an email to the editor of *The Inquisitor* stating why the home improvement fraud charge against Lester was dropped and that the State would be appealing the trial court's decision to quash the filing or maintaining false public records charge against Lester. See id. at 13, ¶ 45. On May 20, 2015, the Louisiana Second Circuit Court of Appeal affirmed the trial court's decision to quash the filing or maintaining false public records charge against Lester on the basis of prescription. See id. at 14-15, ¶ 51; see also State v. Lester, 165 So.3d 1181 (La. App. 2 Cir. 05/20/16).

Lester filed this suit against Hall, Scott, Cox, Turner, Long, May, and Prator on July 2, 2015. See Record Document 1. On October 26, 2015, Turner filed the instant Rule 12(b)(6) Motion to Dismiss. See Record Document 11. Lester filed his Memorandum in Opposition to the instant Motion on November 9, 2015. See Record Document 26. On November 9, 2015, Lester filed a Motion to Amend his Original Complaint in which he sought to (1) clarify that Turner is being sued in both his official and individual capacity and (2) ensure that all claims in the Original Complaint that applied to the "Sheriff Defendants" (Prator, Long, and May) also applied to Turner. See Record Document 25. On November 16, 2015, the Court granted the Motion to Amend. See Record Document 27.

On December 1, 2015, Lester filed an Amended Complaint adding Caddo Parish as a defendant. See Record Document 33. On December 8, 2015, Lester filed another Motion to Amend his Complaint, along with seventeen numbered exhibits. See Record

---

[1] Former co-defendant Charles R. Scott passed away on April 22, 2015, and First Assistant District Attorney Cox replaced Scott as acting District Attorney. See Record Document 20-1.

Document 40. The Court granted the Motion, allowing Lester to file the Amended Complaint but stating that no further amendments will be allowed. <u>See</u> Record Documents 41, 42, and 42-1. This most recent Amended Complaint adds more specific allegations against some Defendants and cites to the attached exhibits as proof of these allegations. <u>See</u> Record Documents 42 and 42-1.

On September 29, 2016, the Court granted the Rule 12(b)(6) Motions to Dismiss filed by Hall and Scott, dismissing all claims against them with prejudice. <u>See</u> <u>Lester v. Caddo Parish</u>, 2016 U.S. Dist. LEXIS 136192 (W.D. La. 2016). On October 26, 2016, the Court granted in part and denied in part a Rule 12(b)(6) Motion to Dismiss by Cox, dismissing most claims against him with prejudice but allowing the defamation claims under federal and state law to proceed past the Motion to Dismiss stage. <u>See</u> <u>Lester v. Caddo Parish</u>, 2016 U.S. Dist. LEXIS 148414 (W.D. La. 2016). On March 30, 2017, the Court granted the Rule 12(b)(6) Motion by Caddo Parish, dismissing all claims against Caddo Parish with prejudice. <u>See</u> <u>Lester v. Caddo Parish</u>, 2017 U.S. Dist. LEXIS 48031 (W.D. La. 2017).

## LAW AND ANALYSIS

### I.  Legal Standards.

#### A.  Pleading Standards and the Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny.

Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-556, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

## B. Section 1983 Actions against State Officials

Under 42 U.S.C. § 1983, a plaintiff may file suit against a person acting under color of state law who has allegedly violated the plaintiff's constitutional rights. Section 1983 claims do not provide a remedy against States because (1) States are not "persons" for the purposes of § 1983 and (2) such claims are barred by the Eleventh Amendment, which grants immunity to the States. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309 (1989); see Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356 (1974). "A suit against a state official in his . . . official capacity is not a suit against the official but rather is a suit against the official's office," and thus is "no different from a suit against the State itself." Will, 491 U.S. at 71, 109 S. Ct. at 2312. Thus, claims against state officials in their official capacity for alleged constitutional violations are both (1) unavailable under § 1983's definition of a "person" and (2) barred by Eleventh Amendment immunity.

However, § 1983 claims against state officials in their individual capacity are not barred. Rather, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." Hafer v. Melo, 502 U.S. 21, 31, 112 S. Ct. 358, 365 (1991). Additionally, "the Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." Id. at 31, 112 S. Ct. at 365. Thus, any damages award against a state official in his individual capacity will be payable from the individual official's funds, not those of the State. See id. at 30-31, 112 S. Ct. at 365.

### C. Section 1983/<u>Monell</u> Claims

In addition to suits against persons acting under the color of state law in their individual capacities, § 1983 also allows for suits against local government entities themselves. In <u>Monell v. Dept. of Social Serv.</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court held that municipalities and local government agencies cannot be held liable for constitutional torts under § 1983 under a theory of respondeat superior, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id.</u> at 691, 694, 98 S. Ct. at 2036–38. In other words, merely establishing a constitutional violation by an employee of a local government entity is not enough to impose liability upon that entity under § 1983.

Rather, to succeed on a <u>Monell</u> claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. <u>McGregory v. City of Jackson</u>, 335 F. App'x 446, 448, 2009 WL 1833958, *2 (5th Cir. 2009), *citing* <u>Rivera v. Houston Indep. Sch. Dist.</u>, 349 F.3d 244, 247-49 (5th Cir. 2003). Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials whose acts may fairly be said to be those of the government entity itself. <u>See</u> <u>Bryan Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 403-05, 117 S. Ct. 1382, 1388 (1997).

## D. Qualified Immunity of State Officials

Though a plaintiff may pursue an action under § 1983 against a state official in his individual capacity, that official, like local officials, may still be protected by qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 243-45, 129 S. Ct. 808, 822 (2009) (holding that state law enforcement officers were entitled to qualified immunity protection). The concern with ending a case at a point of minimum expenditure of time and money is particularly acute when the defendant raises an immunity defense. See Ashcroft v. Iqbal, 556 U.S. 662, 685, 129 S. Ct. 1937, 1953 (2009) ("the basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery") (internal quotations and citations omitted). In fact, a qualified immunity defense is truly "an immunity from suit rather than a mere defense to liability." Pearson, 555 U.S. at 231, 129 S. Ct. at 815. Because of the important public policy behind the qualified immunity doctrine, a higher pleading standard applies in evaluating a plaintiff's complaint against a public official in his individual capacity once the official has raised a qualified immunity defense. See Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc).

Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009). First, the court must determine whether the plaintiff alleged sufficient facts to make out a violation of a constitutional right. See Pearson, 555 U.S. at 232, 129 S. Ct. at 816. Second, the court must determine whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. at 232, 129 S. Ct. at 816. A defendant who can validly raise a

qualified immunity defense will enjoy its protection so long as the allegedly violated constitutional right was not clearly established at the time of the violation. See id. The qualified immunity inquiry turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken". Id. at 244, 129 S. Ct. at 822.

### E.  Qualified Immunity under the Louisiana Constitution

In Moresi v. State, the Supreme Court of Louisiana explained that though the Louisiana Constitution creates a private right of action against those who violate rights secured thereunder, those who act under the color of state law in doing so are entitled to the protection of qualified immunity from liability for violations of the Louisiana Constitution. 567 So.2d 1081, 1091-95 (La. 09/06/1990). In so holding, the Court applied the same standard as federal law for deciding whether a person's actions are protected by qualified immunity. See id. at 1094. Thus, Louisiana applies the same standard as federal law for deciding whether a person's actions are protected by qualified immunity.

### II.    Analysis.

Lester alleges that Turner violated his constitutional rights in a number of ways. Lester's federal constitutional claims against Turner are as follows: (1) "malicious prosecution and/or wrongful conviction;" (2) a Monell claim for "failing to ensure that [he] knew how to analyze a statute and that [he] understands the words and terms in the context of the statute so as not to wrongfully conclude that a crime has been committed;" (3) a Monell claim for failing to "adequately consider exculpatory evidence even after a warrant is obtained but before a warrant is executed;" (4) a Monell claim for

failing to "verify and organize evidence in a way to assure that the evidence is valid;" and (5) civil conspiracy to deprive Lester of his constitutional rights by acting in concert "to fabricate or obtain by suggestive means the statement of Timothy Weaver," which was allegedly false and was based on false photographs. Record Document 1 at 15-29. Lester also filed the following claims against Turner under state law: (1) intentional infliction of emotional distress ("IIED"); (2) negligent infliction of emotional distress ("NIED"); and (3) violations of La. Const. Art. I, §§ 2, 3, 5, 12, 13, 15, 16, 20, 22, and 24. Record Document 1 at 25-27. Lester originally filed suit against Turner only in his individual capacity, but later amended his Complaint such that all claims against Turner are both individual and official capacity claims. See Record Documents 1, 25, and 27.

Lester bases all of these claims on a number of specific factual allegations against Turner. These specific factual allegations are that:

(1) on March 19, 2009, Turner began investigating Lester's background and requesting documents related to his background, particularly Lester's application for a contractor's license from the Louisiana State Licensing Board;

(2) on May 7, 2009, Turner received certified copies of documents confirming Lester's Texas prior misdemeanor conviction;

(3) on June 5, 2009, Turner received certified copies of Lester's name change;

(4) on June 11, 2009, Turner received documents from the City of Shreveport concerning Mrs. Broadway and her property at 5704 McAlpine St. in Shreveport;

(5) on July 15, 2009, Turner obtained a warrant for Lester's arrest for the crime of filing or maintaining false public records under La. Rev. Stat. § 14:133 based on an allegedly faulty premise and an obvious misinterpretation of the statute and law;

(6) on July 31, 2009, Turner, Long, and May accompanied Weaver to 5704 McAlpine St. to inspect the property;

(7) on August 18, 2009, Turner received a letter from Weaver describing the state of the insulation in the attic of the 5704 McAlpine property, a letter that contained false, fraudulently obtained statements about the state of the property and the work Lester performed on it;

(8) on August 20, 2009, Turner obtained an arrest warrant for Lester for Home Improvement Fraud under La. Rev. Stat. § 202.1 "based on [a] faulty understanding of the . . . statute and completely ignoring the affirmative defenses enumerated within the statute which" allegedly would have eliminated the investigation; and

(9) on August 24, 2009, Turner, Long, and May interviewed Daniel Lacour and asked him about Lester's work on 5704 McAlpine.

Record Document 1 at 8, ¶¶ 24-32.

## A. Lester's Claims Against Turner in His Official Capacity

### i.   Lester's <u>Monell</u> Claims Against Turner Fail as a Matter of Law.

Lester's Complaint contains three different <u>Monell</u> claims against Turner. Originally, these <u>Monell</u> claims were only against Prator, Long, and May, the "Sheriff Defendants" as labeled in Lester's Original Complaint. <u>See</u> Record Document 1. However, Lester's first amendment to his Complaint stated that he wished to add all claims against the "Sheriff Defendants" as claims against Turner as well, so these <u>Monell</u> claims are all against both Turner and the "Sheriff Defendants" under Lester's current Complaint. <u>See</u> Record Documents 25 and 27.

The <u>Monell</u> claims against Turner fail, however, for two reasons. First, as explained in Section I, C, *supra*, <u>Monell</u> claims are claims against a *municipal or local policymaking authority* for "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell v. Dept. of Social Serv.</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). These types of claims simply cannot be brought against

state officials in their official capacity or state government entities. A claim seeking damages against a state official in his official capacity or a state entity for an alleged unconstitutional policy or custom is barred by both (1) the fact that States are not "persons" under § 1983 and (2) Eleventh Amendment immunity.[2] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309 (1989); see Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356 (1974).

Second, Lester's Monell claims against Turner fail because, even if such claims were applicable to state officials or entities, Turner is not a policymaker. As this Court explained in its Memorandum Ruling dismissing all Monell claims against Defendant Hall, the proper defendant in a § 1983 Monell claim is "the official or government body with final policymaking authority over the person who committed the violation." Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 at *19 (W.D. La. 2016), citing Burge v. Parish of St. Tammany, 187 F.3d 452, 469 (5th Cir. 1999). Though Lester alleges that Turner was a "present or former Louisiana State Trooper, detective, or supervisor," he is unquestionably not the person with final policymaking authority over the Louisiana State

_____

[2] Of course, under the Ex Parte Young doctrine, a plaintiff can obtain prospective injunctive relief and declaratory relief against a state official who is violating his or her constitutional rights. 209 U.S. 123, 28 S. Ct. 441 (1908). This doctrine "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law," even if substantial costs to a State would result therefrom. See Milliken v. Bradley, 433 U.S. 267, 289, 97 S. Ct. 2749, 2762 (1977). To determine whether a plaintiff has alleged a proper claim under the Ex Parte Young doctrine, a federal court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S. Ct. 1753, 1755 (2002) (internal citations and quotations omitted). Lester's Complaint only alleges past constitutional violations by Turner and seeks injunctive relief only to prevent Defendants "from retaliating against Plaintiff . . . or those representing him in this case." Record Document 1 at 29, ¶ 116 (C). Thus, Lester has not stated a claim for prospective injunctive relief against Turner for an ongoing constitutional violation under the Ex Parte Young doctrine.

Police. Record Document 1 at 3, ¶ 8. The Louisiana State Police is a sub-unit of the Louisiana Department of Public Safety, an independent executive branch agency of the state government. <u>See</u> La. Rev. Stat. § 36:401, *et seq.* As such, an individual state trooper like Turner, even if he were in some supervisory role, would not qualify as the final policymaking authority for the Louisiana State Police. Therefore, all of Lester's <u>Monell</u> claims against Turner must be dismissed.

### ii. Lester's Other Claims against Turner in His Official Capacity also Fail as a Matter of Law.

In addition to these three <u>Monell</u> claims, Lester also filed other federal constitutional claims against Turner in his official capacity: (1) "malicious prosecution and/or wrongful conviction" and (2) civil conspiracy to fabricate evidence. Record Document 1 at 15-16 and 23-24. "A suit against a state official in his . . . official capacity is not a suit against the official but rather is a suit against the official's office," and thus is "no different from a suit against the State itself." <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). Section 1983 claims do not provide a remedy against the State because (1) States are not "persons" for the purposes of § 1983 and (2) such claims are barred by the Eleventh Amendment. <u>See</u> <u>id.</u> at 66, 109 S. Ct. at 2309; <u>see</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 663, 94 S. Ct. 1347, 1356 (1974). Therefore, these claims against Turner in his official capacity must also be dismissed.

### B. Lester's Federal Claims against Turner in His Individual Capacity

Unlike claims against state officials in their official capacity, claims against state officials in their individual capacity are cognizable under § 1983. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 30-31, 112 S. Ct. 358, 365 (1991). Thus, the Court must address Lester's (1)

"malicious prosecution and/or wrongful conviction" and (2) civil conspiracy to fabricate evidence claims against Turner in his individual capacity. Record Document 1 at 15-16 and 23-24. First, the Court will address Lester's wrongful conviction claim, then his malicious prosecution claim, and finally his civil conspiracy claim.

### i. Lester's "Wrongful Conviction" Claim against Turner

Lester's "wrongful conviction" claim against Turner fails as a matter of law. Logically, a claim for wrongful conviction cannot proceed unless the plaintiff has actually been convicted of a crime as a result of the defendant's actions. Here, it is undisputed that Lester was never convicted of either home improvement fraud or filing or maintaining a false public record. See State v. Lester, 165 So. 3d 1181 (La. App. 2 Cir. 05/20/2015). Thus, Lester's wrongful conviction claim against Turner in his individual capacity must be dismissed. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 at *15 n.1 (W.D. La. 2016) (similarly concluding that Lester has no claim for wrongful conviction because he has never been convicted of home improvement fraud or filing or maintaining a false public record).

### ii. Lester's "Malicious Prosecution" Claim Against Turner

In Castellanos v. Fragozo, an extensive *en banc* opinion, the Fifth Circuit explained that all of the federal circuit courts "have been inexact in explaining the elements of a claim for malicious prosecution brought under the congressional grant of the right of suit under 42 U.S.C. § 1983." 352 F.3d 939, 945 (5th Cir. 2003). The Court held that "'malicious prosecution' standing alone is no violation of the United States Constitution." Id. at 942. "Causing charges to be filed without probable cause will not without more violate the Constitution." Id. at 953. Rather, "the initiation of criminal

charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example . . . [but] such claims of lost constitutional rights are for violation of rights locatable in constitutional text . . . not claims for malicious prosecution." Id. at 953-54. To proceed on what has been erroneously referred to as a "malicious prosecution" claim under § 1983, then, the Court held that a plaintiff must identify the constitutional right that was allegedly violated by the institution of a prosecution against the plaintiff. See id. at 945 ("we must insist on clarity in the identity of the constitutional violations asserted").

In the instant action, the section of the Original Complaint in which Lester states his "malicious prosecution and/or wrongful conviction" claim against Defendants does not make reference to a specific constitutional right that the Defendants allegedly violated. See Record Document 1 at 15-16, ¶¶ 52-58. However, this section does state that as a direct result of Turner and the other Defendants' actions, Lester was "wrongfully arrested and prosecuted." Id. at 16, ¶ 58. Thus, though Lester makes no specific citation to a particular constitutional provision in this section or his amendments to the Original Complaint, this reference to a wrongful arrest is enough to identify the particular constitutional right that was allegedly violated–the right under the Fourth Amendment to be free from unreasonable seizures. See id.; see also Record Documents 25, 27, 33, 40, 41, 42, and 42-1; see Castellanos, 352 F.3d at 959 (when a plaintiff claims constitutional violations related to pretrial events like an arrest, the Fourth Amendment is the proper constitutional provision on which the claim is based).

Unlike his co-defendant Cox and his former co-defendants Scott and Hall, Turner does not qualify for absolute immunity protection for instituting legal proceedings

against Lester because Turner is a law enforcement officer rather than a prosecutor. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 (W.D. La. 2016); see Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 148414 (W.D. La. 2016). However, Turner has asserted the defense of qualified immunity from suit on all claims. See Record Documents 11 and 11-1. Once a defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009). First, the court must determine whether the plaintiff alleged sufficient facts to make out a violation of a constitutional right. See Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009). Second, the court must determine whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. at 232, 129 S. Ct. at 816. If Turner's actions were objectively reasonable in light of clearly established law, even taking Lester's factual allegations as true, then Lester's claim must be dismissed. See id. at 244, 129 S. Ct. at 822 (the qualified immunity inquiry turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken").

The Court finds that Lester has failed to overcome Turner's qualified immunity defense. Lester's Memorandum in Opposition to the Motion to Dismiss points out alleged deficiencies in the Motion to Dismiss, arguing that the Motion's arguments "ignore" certain portions of Lester's Complaint. Record Document 26 at 3-4. The Memorandum in Opposition also argues that Turner's "incompetence" in misinterpreting the filing or maintaining false public records statute and in assembling the evidence against Lester for the home improvement fraud charge "is not covered under qualified

immunity." Id. at 5-6. Lester's Memorandum in Opposition states the general rules for qualified immunity with citation to numerous cases. See id. at 2-3. However, it contains no in-depth discussion of the cases cited and no comparison of the facts of this case to the facts of similar cases in which a qualified immunity defense was overcome. See id.

It may be true, as Lester argues, that "even if there is no closely analogous case law, a right can be clearly established on the basis of 'common sense.'" Id. at 3, quoting Giebel v. Sylvester, 244 F.3d 1182, 1189 (9th Cir. 2001). Nonetheless, Lester still bears the burden of overcoming the qualified immunity defense. See Club Retro LLC, 568 F.3d at 194. A conclusory assertion that a law enforcement officer's misinterpretation of statutes and mistakes in assembling evidence for an arrest warrant "constitute incompetence . . . which is not covered under qualified immunity," without more, is not enough to satisfy this burden. Record Document 26 at 5. For this failure alone, dismissal of Lester's Fourth Amendment claim would be proper.

Additionally, the Court's own research and analysis of qualified immunity also confirms that Turner is entitled to qualified immunity from suit on this claim. Lester's allegations against Turner focus on Turner's investigation of Lester, his misinterpretation of the filing false or misleading public records statute, his failure to consider affirmative defenses under the home improvement fraud statute, and his errors in assembling evidence for the home improvement fraud charge. See Record Document 1 at 8, ¶¶ 24-32; see Record Document 26 at 5.

### a. Turner's Actions Regarding the Arrest for Filing or Maintaining False Public Records.

With respect to the filing or maintaining false public records charge, the Court finds that Lester's allegations, taken as true, fail to show that Turner's actions are not

protected by qualified immunity. In dismissing this charge against Lester, the Louisiana Second Circuit Court of Appeal first held that the charge was untimely with respect to "filing" a false public record because Lester first filed the application for a contractor's license in 2003, and the charge was not filed until 2009. See State v. Lester, 165 So. 1181, 1184-87 (La. App. 2 Cir. 05/20/2015). Second, the Court held that the term "maintaining" within the statute applied only to "those charged with the legal requirement of record retention," not members of the public who have simply filed records with public offices. Id. at 1187. Thus, Lester's strongest argument regarding the filing or maintaining false public records charge is as follows: (1) Turner was incompetent in misinterpreting the statute and obtaining an arrest warrant for Lester on this charge; (2) therefore, there was no probable cause for the arrest; and (3) because there was no probable cause, Turner violated Lester's Fourth Amendment rights.

The Court rejects this argument. At the time when Turner sought an arrest warrant, even under Lester's allegations, he had undertaken a thorough investigation into Lester's background and had found (1) Lester's Texas misdemeanor charge for possession of marijuana, (2) Lester's application to become a licensed contractor, and (3) Lester's applications to renew his contractor's license. See Record Document 1 at 5-6, ¶¶ 24-28. It is undisputed that Lester was actually convicted of the Texas misdemeanor charge and that he misrepresented this fact on his application for a contractor's license. See Record Document 1; see also State v. Lester, 165 So. 3d at 1183 (Lester's answer to the application question regarding past criminal convictions "was indeed inaccurate"). The statute in question provides, in pertinent part, that:

A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following: . . .
(3) Any document containing a false statement or false representation of a material fact.

La. Rev. Stat. § 14:133.

As stated, the qualified immunity defense provides immunity to a government official so long as his or her actions are objectively reasonable in light of clearly established law. See Pearson v. Callahan, 555 U.S. 223, 244, 129 S. Ct. 808, 822 (2009). Under these circumstances, the Court finds that Turner's conclusion that there was probable cause to seek an arrest warrant from a judge for filing or maintaining false public records was objectively reasonable in light of clearly established law. The opinion in State v. Lester explains, under Louisiana's rules for interpreting criminal statutes and in the absence of any rules requiring a contractor to "maintain" his original application for a license, why (1) the time period for prosecuting Lester for the offense had passed and (2) Lester's renewal applications could not constitute "maintaining" a false public record under the statute. See 165 So. 3d at 1183-87. However, the Court is unaware of any authority requiring law enforcement officers to engage in complex statutory construction before seeking an arrest warrant. Qualified immunity protects an officer's mistakes about what the law requires so long as those mistakes are reasonable. See Saucier v. Katz, 533 U.S. 194, 205, 121 S. Ct. 2151, 2158 (2001). The ordinary, plain meaning of "maintain" is "to keep in an existing state (as of repair, efficiency, *or validity*)." Webster's New Collegiate Dictionary, "Maintain," 693 (1977) (emphasis added).

When Turner sought the arrest warrant, the documents in his possession showed that Lester had filed a false public record and that he failed to ever correct his false statement in that record even though he had renewed his contractor's license several times. See Record Document 1 at ¶¶ 24-28. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." United States v. Nunez-Sanchez, 478 F.3d 663, 666-67 (5th Cir. 2007). Under the ordinary, plain meaning of the statutory text and the evidence available to Turner, Turner could reasonably (though erroneously) have concluded that Lester's failure to correct his false representation in his applications to renew his contractor's license constituted "maintaining" a false public record within the four-year period for prosecuting this crime, giving Turner probable cause to seek an arrest warrant from a judge. See McBride v. Grice, 576 F.3d 703, 707 (7th Cir. 2009) (as a general rule, "once an officer has established probable cause, he may end his investigation"). Turner's mistake of law in seeking an arrest warrant for Lester for filing or maintaining false public records was objectively reasonable. At the very least, Louisiana courts' interpretation of this statute was not so clearly established that Turner should have known of his mistake of law at the time he sought an arrest warrant for Lester. Therefore, Lester cannot base a § 1983 claim for the violation of his Fourth Amendment rights on Turner's actions regarding this arrest. See Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991) ("even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity").

### b. Turner's Actions Regarding the Arrest for Home Improvement Fraud.

The Court also finds that Lester's allegations against Turner regarding the arrest for home improvement fraud, taken as true, fail to overcome Turner's qualified immunity defense. Again, with respect to this charge, Lester alleges that Turner (1) failed to consider affirmative defenses that may have applied to Lester's case and (2) failed to properly obtain and organize the evidence for this charge. <u>See</u> Record Document 1 at 8, ¶¶ 24-32, 38, 52-58, 63, and 75.[3]

It appears that the Fifth Circuit has not yet decided whether evidence supporting an affirmative defense is relevant to the probable cause inquiry. <u>See</u> <u>Dressner v. Crowe</u>, 2013 U.S. Dist. LEXIS 131987 at *6-7 (E.D. La. 2013) (finding that the Fifth Circuit has declined to address this issue in the past). This means that any argument on the basis of a failure to consider affirmative defenses is almost certainly precluded because the law in this area was not clearly established at the time Turner sought an arrest warrant for Lester on the home improvement fraud charge. <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009).

However, even assuming *arguendo* that this conclusion is incorrect, Lester's claim on the basis of the affirmative defense argument would fail even in those circuits that have held that officers must at least consider affirmative defenses in making a probable cause determination. Other circuits have held that an officer investigating a

---

[3] Lester also alleges that Turner, Long, May, and Prator conspired to fabricate evidence for this charge as an alternative to the allegation that they merely committed investigatory errors. The Court addresses those factual allegations in Section II, B, iii, *infra*. Additionally, though the allegations of failure to properly obtain and organize the evidence for the home improvement charge are contained in one of Lester's <u>Monell</u> claims, the Court will consider it for the purposes of Lester's Fourth Amendment wrongful arrest claim. <u>See</u> Record Document 1 at 17 and 22, ¶¶ 63 and 75.

possible crime "may not ignore conclusively established evidence of the existence of an affirmative defense, but the officer has no duty to investigate the validity of any defense." Hodgkins v. Peterson, 355 F.3d 1048, 1061 (7th Cir. 2004). Here, Lester alleges that Turner ignored the affirmative defense that applies when a home improvement contractor "has written verification of job completion." Record Document 1 at 11, ¶ 38, citing La. Rev. Stat. § 14:202.1(C)(6).[4] Lester alleges that he had such written verification. See id. Lester attached two documents labeled "Contractor's Payout Request" to his most recent Complaint, both of which appear to be signed by Lacour and Broadway. See Record Document 40 at 18-19. It is unclear whether Lester contends that these documents constituted written verification of job completion, but the Court will nonetheless take it as true that he had verification of job completion.

However, taking all of Lester's allegations as true, the Court finds that the evidence available to Turner did not "conclusively establish" that this affirmative defense was met. Hodgkins, 355 F.3d at 1061. Lacour and other city inspectors were charged with filing or maintaining false public records as a result of Turner's investigation. See Record Document 1 at 9, ¶ 34. According to Lester's complaint, Lacour told Turner that "we [city inspectors], somethings (sic) we just sign off and be through with it instead of trying to pressure these guys [contractors] into doing it." Id. at 8, ¶ 32. An investigating officer could reasonably conclude that this statement calls into question the validity of any document signed by Lacour or any of the other associated city inspectors in performing their home inspection duties, including any written verifications that contracting jobs were completed. Under other circumstances, the existence of written

_____

[4] The statute was amended in 2009, 2012, and 2014, and the statute no longer contains the affirmative defense to which Lester refers. See La. Rev. Stat. § 14:202.1.

verification of job completion might have "clearly established" that this affirmative defense applied; if that were the case, Turner could not have reasonably concluded that probable cause existed for home improvement fraud. <u>Hodgkins</u>, 355 F.3d at 1061. However, under these circumstances, Turner's conclusion that probable cause existed was objectively reasonable in light of clearly established law.

Lester's allegations regarding potential errors by Turner in obtaining and organizing the evidence are somewhat unclear. Lester alleges that "there was some type of mistake, either accidental or on purpose that resulted in a wrong photograph of the attic being used as evidence." Record Document 1 at 23, ¶ 75. He alleges that Turner should have gone into the attic and checked it himself "instead of relying 100% on Mr. Weaver." <u>Id.</u> Assuming that this is true (aside from the conclusory allegation that the photographs were fraudulent), Lester has not stated a claim for a violation of the Fourth Amendment under these allegations. Weaver was a property inspector, and was therefore familiar with construction and remodeling. <u>See</u> Record Document 1 at 6, ¶ 29. Turner's reliance on a property inspector's statements and observations of the work performed on the house in question in seeking an arrest warrant for Lester was objectively reasonable under clearly established law. <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 228, 112 S. Ct. 534, 537 (1991) (officers may rely on both their personal observations and "reasonably trustworthy information" from other sources in making a probable cause determination). Therefore, the Court finds that Lester cannot base a § 1983 claim for a violation of his Fourth Amendment rights on Turner's actions regarding this arrest.

### iii.    Lester's Civil Conspiracy Claim Against Turner

As an alternative theory to Lester's claim that Turner committed some negligent error in organizing the evidence for an arrest warrant for Lester on the home improvement fraud charge, Lester claims that Turner, May, Long, and Prator conspired to deprive Lester of his constitutional rights "not to be deprived of liberty without due process of law [and] not to be illegally seized and detained." Record Document 1 at 23-24, ¶ 78. Specifically, Lester claims that "Defendants acted in concert to fabricate or obtain by suggestive means the statement of Timothy Weaver" and that "the information in [Weaver's letter describing the work performed on Mrs. Broadway's attic at 5704 McAlpine St.] was false along with the photographs of the attic that the Sheriff Defendants submitted in their report." Id. at 24, ¶ 79. Lester alleges that Turner, Long, May, and Prator were motivated to fabricate this evidence by "a disliking or hateful discriminatory attitude toward . . . African-American persons." Id. at 24, ¶ 80. The Court rejects this argument.

The defense of qualified immunity is available to state officials accused of wrongdoing under 42 U.S.C. § 1985(3). McKee v. Lang, 393 F. App'x 235, 238 (5th Cir. 2010). As explained in Section I, D, *supra*, because of the important public policy behind the qualified immunity doctrine, a higher pleading standard applies in evaluating a plaintiff's complaint against a public official in his individual capacity once the official has raised a qualified immunity defense. See Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (*en banc*). Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009). Lester fails to demonstrate

the inapplicability of the qualified immunity defense as it pertains to his § 1985(3) claim in his Memorandum in Opposition to Defendant's Motion to Dismiss. Rather, Lester in a short paragraph cites to his complaint and repeats that Turner and Weaver were complicit in depriving Lester of due process and to not be illegally seized and detained. See Record Document 26 at 6.

However, assuming *arguendo*, that Lester is able to overcome Turner's qualified immunity defense, Lester fails to allege sufficient facts to state a claim under 42 U.S.C. § 1985(3). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." Hilliard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994). Thus, "the plaintiff must show the conspiracy was motivated by a class-based animus." Id. at 653.

Taking the facts of Lester's complaint as true and construing those facts in the light most favorable to Lester, Lester's complaint does not allege a course of conduct creating a violation of 42 U.S.C. § 1985(3). Lester's complaint merely recites the elements required to prove civil conspiracy filling in the elements with the facts of his case. Lester's complaint is speculative concerning his §1985(3) claim rather than plausible. See Bell Atlantic Corp. v. Twombly, 550 U.S. 555-556, 127 S. Ct. 1955, 1965 (2007). Lester fails to allege sufficient operative facts were the Court can draw a reasonable inference that Turner was involved in a conspiracy to deprive Lester of his constitutional rights.

Nonetheless, even if this Court were to assume that Lester alleged sufficient operative facts to meet elements one, two, and three (this Court considers the factual allegations merely a recitation of the elements under § 1985(3) and conclusory), Lester fails to allege specific facts to make out a violation of a constitutional right. As the Court found *supra*, Lester has not suffered a violation of his Fourth Amendment rights. The actions taken by Turner were objectively reasonable as he was working concurrently with May and Long in an effort to curb white collar crimes in the Shreveport/Bossier community. Therefore, Lester fails to state a claim upon which relief can be granted under § 1985(3).

Moreover, Lester fails to allege facts sufficient to establish that the conspiracy was motivated by a class-based animus. The undisputed fact that Lester was arrested with six other African American contractors and inspectors, see Record Document 1 at 9, ¶ 34, is not enough to show that racial considerations motivated the Defendants' conduct. See Derischebourg v. Clark, No. 15-CV-1712, 2016 WL 98617, at *8 (E.D. La. Jan. 8, 2016) (The factual assertion by the plaintiff that he is an African-American is insufficient to establish a U.S.C. § 1985 civil conspiracy claim). In Ducksworth v. Rook, the court held that the plaintiff may be an African American, and he may have been harassed and beaten by police officers. However, the previous premise does not equate to the conclusion that he was harassed and beaten by police officers *because* he is African American. No. 14-CV-146-KS-MTP, 2015 WL 3796065, at *4 (S.D. Miss. June 18, 2015), aff'd, 647 F. App'x 383 (5th Cir. 2016).

Lester's complaint is entirely devoid of any specific factual allegations that racial considerations motivated Turner's conduct. See Hamilton v. Serv. King Auto Repairs,

437 F. App'x 328, 329 (5th Cir. 2011) (unsubstantiated and conclusory claims of racial discrimination under 42 U.S.C. §§1985 and 1986 lacked merit). Lester's allegation that Turner, Long, May, and Prator were motivated to fabricate this evidence by "a disliking or hateful discriminatory attitude toward . . . African-American persons" is a cursory, conclusory allegation that does not meet the pleading standard under Federal Rule of Civil Procedure 12(b)(6), and the Court does not have to accept Lester's conclusory allegations of civil conspiracy as true. See Iqbal, 556 U.S. at 678. Accordingly, this Court finds that Lester's civil conspiracy claim against Turner should be dismissed.

### C. Lester's State Constitutional claims against Turner

As stated in Section I, E, *supra*, government officials' protection under Louisiana's law of qualified immunity is essentially identical to the protection afforded by federal law. See Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So. 2d 1081, 1091-95 (La. 1990). Thus, qualified immunity protects Turner from suit as to Lester's state constitutional claims to the extent they are based on acts protected by qualified immunity. See Moresi, 567 So. 2d at 1093 (The same factors that compelled the United States Supreme Court to recognize a qualified immunity for state officers under § 1983 require the [Louisiana Supreme Court] to recognize a similar immunity for them under any action arising under the state constitution). As explained in Section II, B, iii, *supra*, Turner is protected by qualified immunity for his actions in investigating Lester and obtaining a warrant for his arrest for the charges of filing or maintaining false public records and home improvement fraud. Thus, because qualified immunity protects Turner from suit on the basis of these actions under federal law, all of Lester's state constitutional claims must be dismissed.

### D. Lester's State Law IIED and NIED claims against Turner

Lester's complaint fails to overcome the heightened standard required to be successful on IIED and NIED claims. To recover for IIED, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1022 (La. 2000). The Louisiana Supreme Court in White v. Monsanto Co. stated:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991), *quoting* Restatement (Second) of Torts § 46 (1965).

Furthermore, the court in Nicholas determined that it was not enough that a defendant acted with an intent which was tortious or even criminal in order to prove that the conduct was extreme and outrageous. 765 So. 2d at 1022.

Apart from Lester's inability to allege facts sufficient to show that Turner's conduct was extreme and outrageous, Lester's complaint is a mere recitation of the elements required to succeed on an IIED claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not

meet the standards of Rule 8(a)(2)). As the Court held *supra*, Turner's conduct throughout the criminal proceeding against Lester was reasonable rather than extreme and outrageous. Accordingly, Lester is unable to meet the heightened standard required to state a claim for IIED; thus, Lester's IIED claim must be dismissed.

In the alternative, Lester attempts to state a claim against Turner for NIED. To state a cause of action for NIED, there must be proof that the defendant violated some legal duty owed to the plaintiff. <u>Haith v. City of Shreveport,</u>, No. 03-CV-2128, 2005 WL 2140583, at *6 (W.D. La. Sept. 1, 2005).The plaintiff must also meet the heavy burden of proving outrageous conduct by the defendant. <u>Id.</u> at *6.

As indicated *supra*, Lester has not pled facts to show that Lester's conduct was outrageous. Moreover, Lester's negligence claim is undermined because the Court earlier found Turner's conduct reasonable. <u>See</u> <u>Roten v. City of Minden</u>, No. 16-CV-0381, 2017 WL 1398655, at *8 (W.D. La. Apr. 18, 2017) ("The focus of the qualified immunity inquiry is reasonableness. By finding the actions of Engi and Young to be reasonable under the qualified immunity analysis, Roten's state law negligence claims are undermined."). Therefore, Lester's NIED claim must be dismissed.

## CONCLUSION

Turner's Rule 12(b)(6) Motion to Dismiss (Record Document 11) is **GRANTED.** All of Lester's claims against Turner are hereby **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 12th day of October, 2017.

S. MAURICE HICKS, JR.<br>
UNITED STATES DISTRICT JUDGE