# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

JAMES HAYWARD LESTER       CIVIL ACTION NO. 15-2008

VERSUS       JUDGE S. MAURICE HICKS, JR.

CADDO PARISH, ET AL.       MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court are Defendants Lieutenant Jay Long ("Long"), Sergeant John May ("May"), and Sheriff Steve Prator's ("Prator") Motion for Summary Judgment (Record Document 13) under Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of all of Plaintiff James Hayward Lester's ("Lester") claims. For the reasons stated in the instant Memorandum Ruling, Defendants' Motion for Summary Judgment is hereby **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Lester is a resident of Tarrant County, Texas, but for many years has been active as a commercial contractor in Shreveport. See Record Document 1 at 1-4. On February 28, 2003, Lester first filed an application for a Louisiana commercial contractor's license in Shreveport. See id. at 4, ¶ 13. This application included a statement that Lester had never been convicted of a felony or misdemeanor; in fact, Lester had previously been convicted of a misdemeanor in Texas. See id. at 5, ¶ 25; see also State v. Lester, 49-787 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1181. Lester received a Louisiana commercial contractor license on May 15, 2003. See Record Document 1 at 4, ¶ 14. He reapplied annually for such a license and held a renewed license during all times relevant to this case. See id. at 4, ¶ 15.

Part of Lester's contracting work involved making repairs to houses of people who applied for grants from the City of Shreveport's Bureau of Housing and Business Development. See id. at 4, ¶¶ 16-17. Lester would submit a bid for the requested work and, if he had the lowest bid, he would receive the contract to perform the work. See id. In October 2007, Lester was awarded the contract to perform work on Ms. Bessie Lee Broadway's ("Broadway") home. See id. On January 14, 2008, a change order for the original contract was approved, allowing Lester to receive an additional fee of $5,100 for additional work. See id. at 4, ¶ 21. On January 24, 2008, Lester, Broadway, and City Inspector Daniel Lacour ("Lacour") executed a "Contractor's Pay-Out Request" to pay Lester $17,900 for work that Lester had completed. See id. at 4, ¶ 20.

On March 8, 2008, Lacour and Lester orally agreed to a second change order which would allow Lester to repair and service the furnace in the home rather than replace it entirely and use the money that would have paid for a new furnace to replace a deteriorated wall. See id. at 4-5, ¶ 22. Lacour later admitted that he forgot to complete a written change order for these changes. See id. On April 1, 2008, Lester, Broadway, and Lacour executed a second "Contractor's Pay-Out Request" to pay Lester $7,090 for the remainder of the work that Lester had completed. See id. at 5, ¶ 23.

On March 19, 2009, Sergeant Jason Turner ("Turner") of the Louisiana State Police and Long and May of the Caddo Parish Sheriff's Department began an investigation into Lester's activities as a contractor. See id. at 5, ¶ 24. During the investigation, Turner found Lester's previous misdemeanor conviction and received documents related to the repairs Lester completed on Broadway's house. See id. at 5-6, ¶¶ 24-27. On July 15, 2009, Turner obtained a warrant for Lester's arrest for filing or

maintaining false public records in violation of La. Rev. Stat. § 14:133 by submitting renewal applications for his contractor's license without correcting the statement that he had not been convicted of a previous misdemeanor. <u>See id.</u> at 6, ¶ 28.

Turner, Long, and May continued their investigation of Lester by inspecting Broadway's property with another inspector, Timothy Weaver ("Weaver"). <u>See id.</u> at 6, ¶ 29. Weaver later sent a letter to Turner stating that he found that Lester had failed to install as much insulation in Broadway's attic as the contract specified. <u>See id.</u> at 7, ¶ 30. On August 29, Turner obtained an arrest warrant for Lester and Lacour's arrests for home improvement fraud in violation of La. Rev. Stat. § 14:202.1. <u>See id.</u> at 7 ¶ 31. In interviews with the officers after the arrest warrants were issued but prior to his actual arrest, Lacour admitted that he had failed to complete a second change order for Broadway's house, and he stated that if the officers had found something wrong with the repairs to the house, "its my fault, nobody elses . . . I should've did my job right (sic)." <u>See id.</u> at 8, ¶ 32.

On August 31, 2009, Lester and six other African American contractors and inspectors, including Lacour, were arrested. <u>See id.</u> at 9, ¶ 34. That day, a press conference "featuring Caddo Parish Sheriff Steve Prator and Caddo Parish District Attorney Charles Scott" was held on the steps of the Caddo Parish courthouse. <u>See id.</u> at 9, ¶ 35. At the press conference, Prator announced a $1.5 million scandal involving the arrestees to defraud the City of Shreveport, a statement that Lester alleges was made "falsely and with the full intention to mislead the public." <u>See id.</u> at 9, ¶ 35. On November 18, 2009, Assistant District Attorney Lea Hall, Jr. ("Hall") filed the first Bill of Information against Lester, charging him with home improvement fraud and filing or maintaining false public records. <u>See id.</u> at 10, ¶ 36.

On May 25, 2010, the trial of one of the other contractors, James Alex III ("Alex"), resulted in a mistrial. <u>See id.</u> at 10, ¶ 37. According to Hall's statements to a reporter after the trial, the parties had made a joint motion for mistrial after they discovered that the jury instructions did not reflect the fact that Alex was charged with home improvement fraud that allegedly occurred under an old statute and an amended statute. <u>See id.</u> at 10, ¶ 37. On July 8, 2010, Lester filed a Motion to Quash the Information in his case on the basis of statutory affirmative defenses to home improvement fraud. <u>See id.</u> at 11, ¶ 38. The trial judge held a hearing on the motion, but reserved a ruling until after trial. <u>See id.</u> at 11, ¶ 39. On September 28, 2011, Lester provided the State with photographic evidence that allegedly proved that he was innocent of the home improvement fraud charge. <u>See id.</u> at 11-12, ¶ 40. On February 14, 2012, a second Bill of Information was filed against Lester which dropped the home improvement fraud charge and included only the filing or maintaining false public records charge. <u>See id.</u> at 12, ¶ 41.

On April 9, 2014, Lester filed a Motion to Quash the Amended Information, which the trial court granted. <u>See id.</u> at 12, ¶¶ 42-43. On July 4, 2014, Sheriff Prator gave an interview to the editor of a local newspaper, *The Inquisitor*, in which he stated that he was frustrated with the fact that Lester had not been prosecuted for home improvement fraud and stating that Lester had committed theft and abuse of Broadway. <u>See id.</u> at 12-13, ¶ 44. That same day, acting District Attorney Dale Cox[1] ("Cox") sent an email to the editor of *The Inquisitor* stating why the home improvement fraud charge against Lester was dropped and that the State would be appealing the trial court's decision to quash the filing

---

[1] Former co-defendant Charles R. Scott passed away on April 22, 2015, and First Assistant District Attorney Cox replaced Scott as acting District Attorney. <u>See</u> Record Document 20-1.

or maintaining false public records charge against Lester. See id. at 13, ¶ 45. On May 20, 2015, the Louisiana Second Circuit Court of Appeal affirmed the trial court's decision to quash the filing or maintaining false public records charge against Lester on the basis of prescription. See id. at 14-15, ¶ 51; see also State v. Lester, 49-787 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1181. Lester filed this suit against Hall, Scott, Cox, Turner, Long, May, and Prator on July 2, 2015. See Record Document 1. On October 29, 2015, Long, May, and Prator filed the instant Rule 56 Motion for Summary Judgment. See Record Document 13. Lester filed his Memorandum in Opposition to the instant Motion on November 24, 2015. See Record Document 28. On November 25, 2015, Lester filed a Motion to Amend his Original Complaint in which he sought to clarify that Long, May, and Prator are being sued in both their official and individual capacities. See Record Document 29. On December 1, 2016, the Court granted this Motion. See Record Document 32.

On December 1, 2015, Lester filed an Amended Complaint adding Caddo Parish as a defendant. See Record Document 33. On December 8, 2015, Lester filed another Motion to Amend his Complaint, along with seventeen numbered exhibits. See Record Document 40. The Court granted this Motion, allowing Lester to file this Amended Complaint but stating that no further amendments will be allowed. See Record Documents 41, 42, and 42-1. This most recent Amended Complaint adds somewhat more specific allegations against some Defendants and cites to the attached exhibits as proof of these allegations. See Record Documents 42 and 42-1.

On September 29, 2016, the Court granted the Rule 12(b)(6) Motions to Dismiss filed by Hall and Scott, dismissing all claims against them with prejudice. See Lester v.

Caddo Parish, 2016 U.S. Dist. LEXIS 136192 (W.D. La. 2016). On October 26, 2016, the Court granted in part and denied in part a Rule 12(b)(6) Motion to Dismiss by Cox, dismissing most claims against him with prejudice but allowing the defamation claims under federal and state law to proceed past the Motion to Dismiss stage. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 148414 (W.D. La. 2016). On March 30, 2017, the Court granted the Rule 12(b)(6) Motion by Caddo Parish, dismissing all claims against Caddo Parish with prejudice. See Lester v. Caddo Parish, 2017 U.S. Dist. LEXIS 48031 (W.D. La. 2017). On October 12, 2017, the Court granted the Rule 12(b)(6) Motion by Turner, dismissing all claims against Turner with prejudice. See Lester v. Prator, 2017 U.S. Dist. LEXIS 169259 (W.D. La. 2017).

**LAW AND ANALYSIS**

## I. Legal Standards

### A. The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325, 106 S. Ct. at 2554; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

Rule 56 states that "a party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Once the party seeking to establish that there is a genuine dispute as to a material fact has cited to such materials, the opposing party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56. "At the summary judgment stage, materials cited to support or dispute a fact need only be

*capable* of being presented in a form that would be admissible in evidence." <u>LSR Consulting, LLC v. Wells Fargo Bank, N.A.</u>, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original). However, once a party has challenged the admissibility of the evidence relied upon to demonstrate a genuine dispute of material fact, the proponent of that evidence must show that the evidence is capable of being presented in a form that would be admissible in evidence. <u>See id.</u> at 534.

**B. Qualified Immunity in 42 U.S.C. § 1983 Claims**

Section 1983 authorizes the assertion of a claim for relief against a person who, acting under the color of state law, allegedly violated the claimant's rights under federal law. <u>See</u> 42 U.S.C. § 1983. Section 1983 actions are often brought against persons acting under the color of state law in their individual capacities, but these persons are often protected from liability by qualified immunity. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 685, 129 S. Ct. 1937, 1953 (2009) (internal quotations and citations omitted). In fact, a qualified immunity defense is truly "an immunity from suit rather than a mere defense to liability." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009).

Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. <u>See</u> <u>Floyd v. City of Kenner</u>, 351 F. App'x 890, 893 (5th Cir. 2009). First, the court must determine whether the plaintiff demonstrated a genuine dispute of material fact as to a violation of a constitutional right. <u>See</u> <u>Pearson</u>, 555 U.S. at 232, 129 S. Ct. at 816. Second, the court must determine whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. <u>Id.</u> at 232, 129 S. Ct. at 816. A defendant

who can validly raise a qualified immunity defense will enjoy its protection so long as the allegedly violated constitutional right was not clearly established at the time of the violation. See id. In other words, the defendant can only be held liable if he violates a right that is clearly established at the time of the violation.

Additionally, when the plaintiff seeks to impose supervisory liability on a defendant public official in his individual capacity, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Thus, in a supervisory liability case, a plaintiff must demonstrate a genuine dispute of material fact as to each of these elements once the defendant has asserted a qualified immunity defense to survive a motion for summary judgment.

### C.  Section 1983/ Monell Claims against Local Governments

In addition to suits against persons acting under the color of state law in their individual capacities, Section 1983 also allows for suits against local government entities themselves. A suit against a state or municipal officer in his or her official capacity is treated as a suit against the entity itself. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985). In Monell v. Dept. of Social Serv., 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court held that municipalities and local government agencies cannot be held liable for constitutional torts under Section 1983 under a theory of respondeat superior, id. at 691, 98 S. Ct. at 2036, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694, 98 S. Ct. at 2036. In other words, merely establishing a constitutional violation by an employee of a local government entity is not enough to impose liability upon that entity under Section 1983.

Rather, to succeed on a Monell claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. McGregory v. City of Jackson, 335 F. App'x 446, 448 (5th Cir. 2009) (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003)). Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials whose acts may fairly be said to be those of the government entity itself. Bryan Cty. Comm'rs v. Brown, 520 U.S. 397, 403-04, 117 S. Ct. 1382, 1388 (1997).

An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," Id. at 417 (Souter, J., dissenting); (2) "where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself," Id. at 417-18 (Souter, J., dissenting); and (3) "even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker . . . can reasonably be said to have been deliberately indifferent to

the need.'" Id. at 419 (Souter, J., dissenting) (quoting City of Canton v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205 (1989)).

### D. Qualified Immunity under Louisiana State Law

As it concerns the doctrine of qualified immunity under Louisiana state law, the Supreme Court of Louisiana explained that though the Louisiana Constitution creates a private right of action against those who violate rights secured thereunder, those who act under color of state law in doing so are entitled to the protection of qualified immunity from liability for violations of the Louisiana Constitution. Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So.2d 1081, 1091-95 (La. 1990). In so holding, the Court applied the same standard as federal law for deciding whether a person's actions are protected by qualified immunity. See id. at 1094. Thus, Louisiana applies the same standard as federal law for deciding whether a person's actions are protected by qualified immunity.

### II. Analysis

### A. Lester's Claims Against Long, May, and Prator in Their Official Capacities

Lester alleges that Long, May, and Prator violated his constitutional rights in a number of ways. Lester's federal constitutional claims against Long, May, and Prator are as follows: (1) "malicious prosecution and/or wrongful conviction;" (2) a Monell claim for "failing to ensure that detectives knew how to analyze a statute and that detectives understand the words and terms in the context of the statute so as not to wrongfully conclude that a crime has been committed;" (3) a Monell claim for failing to "ensure [detectives] adequately consider exculpatory evidence even after a warrant is obtained but before a warrant is executed;" (4) a Monell claim for failing to "verify and organize

evidence in a way to assure that the evidence is valid;" and (5) civil conspiracy to deprive Lester of his constitutional rights by acting in concert "to fabricate or obtain by suggestive means the statement of Timothy Weaver," which was allegedly false and was based on false photographs. Record Document 1 at 15-29. Lester also filed the following claims against Long, May, and Prator under state law: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; and (3) violations of La. Const. Art. I, §§ 2, 3, 5, 12, 13, 15, 16, 20, 22, and 24. Record Document 1 at 25-27. Finally, Lester filed a defamation claim against Prator. Record Document 1 at 24-25.

Lester's Complaint contains three different <u>Monell</u> claims against Long, May, and Prator. First, as explained in Section I, C, *supra*, <u>Monell</u> claims are claims against a municipal or local policymaking authority for "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell v. Dept. of Social Serv.</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). Lester has failed to offer any evidence of a policy or custom of the Caddo Parish Sheriff's Department or Prator to deprive individuals of their constitutional rights that would raise a genuine dispute of material fact regarding the official policies. In each of the Defendants' affidavits, the Defendants testify that it is not the policy of the Caddo Parish Sheriff's Department to arrest without probable cause or to withhold exculpatory evidence. <u>See</u> Record Document 13-2 at 2, ¶4, 13-3 at 2 ¶4, 13-4 at 1-2, ¶ 4. Lester's Memorandum in Opposition to the Defendants' Motion for Summary Judgment (Record Document 28 at 2) attempts to raise a genuine issue of material fact concerning the policies stating "what exactly are the policies? Are they written or verbal? If they are not written, why not? What training has the Sheriff's

Department provided to guard against constitutional violations? What is the policy for disciplining employees for violations of the policies? What supervision did they receive during the investigation?". Lester's memorandum is full of questions rather than factual assertions supported by evidence establishing a policy of the Caddo Parish Sheriff's Department or Prator. Lester, as the non-movant, has failed to meet his burden of proving that a genuine issue of material fact exists by providing only . . . conclusory allegations [and] unsubstantiated assertions that an official policy existed. See Little, 37 F.3d at 1075. The record is devoid of evidence to rebut this finding. Therefore, all of Lester's Monell claims against May, Long, and Prator in their official capacities must be dismissed.

Furthermore, Lester's Monell claims against Long and May fail because Lester fails to offer evidence that would indicate that they have policymaking authority. As this Court explained in its Memorandum Ruling dismissing all Monell claims against Defendant Hall, the proper defendant in a Section 1983 Monell claim is "the official or government body with final policymaking authority over the person who committed the violation." Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 at *19 (W.D. La. 2016) (citing Burge v. Parish of St. Tammany, 187 F.3d 452, 469 (5th Cir. 1999)). Though Lester alleges that Long and May were "present or former Caddo Parish Sheriff Deputies, detectives, or supervisors," they are unquestionably not the persons with final policymaking authority over the Caddo Parish Sheriff's Department. Record Document 1 at 3, ¶ 7. In Louisiana, the sheriff is the final policymaker. See La. Const. Art. 5, § 27; Craig v. St. Martin Par. Sheriff, 861 F. Supp. 1290, 1301 (W.D. La. 1994). Accordingly, Sheriff Prator is the policymaker; however, Lester has failed to offer any evidence that

would raise a general issue of material fact that Prator instituted a policy that would deprive Lester of his constitutional rights.

Lastly, Lester's wrongful conviction, malicious prosecution, and civil conspiracy claims also fail against Long, May, and Prator in their official capacities. As the Court held *supra*, Lester is unable to identify a policy or custom instituted by the Caddo Parish Sheriff's Department, specifically Sheriff Prator, which Long and May followed during the investigation of Lester that would entitle Lester to relief on his wrongful conviction, malicious prosecution, and civil conspiracy claims.

Therefore, all of Lester's claims against May, Long, and Prator in their official capacities must be dismissed.

### B. Lester's Claims Against Long, May, and Prator in Their Individual Capacities

Unlike claims against state officials in their official capacity, claims against state officials in their individual capacities are cognizable under Section 1983. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 30-31, 112 S. Ct. 358, 365 (1991). Thus, the Court must address Lester's (1) "malicious prosecution and/or wrongful conviction" and (2) civil conspiracy to fabricate evidence claims against Long, May, and Prator in their individual capacity. Record Document 1 at 15-16 and 23-24. First, the Court will address Lester's wrongful conviction, malicious prosecution, and civil conspiracy claims against Prator. Next, the Court will address Lester's wrongful conviction claim, then his malicious prosecution claim against Long and May. Finally, the Court will address Lester's civil conspiracy claim against Long and May.

### i. Lester's Wrongful Conviction, Malicious Prosecution, and Civil Conspiracy Claims Against Prator in His Individual Capacity

Lester seeks to impute the actions of Long and May to Prator, which requires a supervisory liability analysis. Supervisory liability may attach under Section 1983 in limited circumstances, but only after an underlying constitutional violation by a deputy has been demonstrated. City of Los Angeles v. Heller, 475 U.S. 796, 799 106 S. Ct. 1571 1573 (1986); Smith v. Walden, 2000 WL 1056091 (5th Cir. 2000). The Court finds that Lester has failed to offer evidence that Long and May violated his Fourth Amendment right against unreasonable searches and seizures, which will be discussed in more depth *infra*; however, assuming *arguendo*, that Long and May violated his Fourth Amendment right, a supervisory liability analysis is necessary.

As indicated in Section I, B, *supra*, in order to be successful when alleging supervisory liability on a public official in his individual capacity, "a plaintiff must prove (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Thus, in a supervisory liability case, a plaintiff must demonstrate a genuine dispute of material fact as to each of these elements once the defendant has asserted a qualified immunity defense to survive a motion for summary judgment.

Lester claims fail as to all three elements. First, Lester has failed to raise a genuine issue of material fact as to the first element that Prator failed to train or supervise Long and May. Lester concludes in his Complaint and Memorandum in Opposition to Defendants' Motion for Summary Judgment that Prator failed to train Long and May, but

fails to support this conclusory assertion of fact. See Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment"). As to the second element, Lester's claims fail because the Court finds that Long and May were properly trained and supervised and Lester's rights were not violated. Lester has failed to provide any support to rebut such a conclusion. Lastly, Lester has failed to show that Prator's alleged failure to train or supervise amounts to deliberate indifference. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." Id. at 381. Lester has failed to offer any facts that would support the Court finding that Prator was deliberately indifferent as it concerns Lester's rights.

Therefore, Lester's wrongful conviction, malicious prosecution, and civil conspiracy claims against Prator should be dismissed.

### ii.     Lester's Wrongful Conviction Claim against Long and May

Lester's wrongful conviction claim against Long and May fails as a matter of law. Logically, a claim for wrongful conviction cannot proceed unless the plaintiff has actually been convicted of a crime as a result of the defendant's actions. Here, it is undisputed that Lester was never convicted of either home improvement fraud or filing or maintaining a false public record. See State v. Lester, 49-787 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1181. Thus, Lester's wrongful conviction claim against Long and May in their individual capacities must be dismissed. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 at *15 n.1 (W.D. La. 2016) (similarly concluding that Lester has no claim for wrongful

conviction because he has never been convicted of home improvement fraud or filing or maintaining a false public record).

### iii. Lester's Malicious Prosecution Claim Against Long and May

In Castellanos v. Fragozo, an extensive *en banc* opinion, the Fifth Circuit explained that all of the federal circuit courts "have been inexact in explaining the elements of a claim for malicious prosecution brought under the congressional grant of the right of suit under 42 U.S.C. § 1983." 352 F.3d 939, 945 (5th Cir. 2003). The Court held that "'malicious prosecution standing alone is no violation of the United States Constitution." Id. at 942. "Causing charges to be filed without probable cause will not without more violate the Constitution." Id. at 953. Rather, "the initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example . . . [but] such claims of lost constitutional rights are for violation of rights locatable in constitutional text . . . not claims for malicious prosecution." Id. at 953-54. To proceed on what has been erroneously referred to as a malicious prosecution claim under section 1983, then, the Court held that a plaintiff must identify the constitutional right that was allegedly violated by the institution of a prosecution against the plaintiff. See id. at 945 ("we must insist on clarity in the identity of the constitutional violations asserted").

In the instant action, the section of Lester's Original Complaint in which Lester states his "malicious prosecution and/or wrongful conviction" claim against Defendants fails to make reference to a specific constitutional right that the Defendants allegedly violated. See Record Document 1 at 15-16, ¶¶ 52-58. However, this section does state that as a direct result of Long and May's actions, Lester was "wrongfully arrested and

prosecuted." Id. at 16, ¶ 58. Thus, though Lester makes no specific citation to a particular constitutional provision in this section, his amendments to the Original Complaint and his Memorandum in Opposition to Defendants' Motion for Summary Judgment referencing a wrongful arrest is enough to sufficiently identify the particular constitutional right that was allegedly violated–the right under the Fourth Amendment to be free from unreasonable searches and seizures. See id.; see also Record Documents 25, 27, 28, 33, 40, 41, 42, and 42-1; see Castellanos, 352 F.3d at 959 (when a plaintiff claims constitutional violations related to pretrial events like an arrest, the Fourth Amendment is the proper constitutional provision on which the claim is based).

Unlike his co-defendant Cox and former co-defendants Scott and Hall, Long and May do not qualify for absolute immunity protection for instituting legal proceedings against Lester because Long and May are law enforcement officers rather than prosecutors. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 (W.D. La. 2016); see Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 148414 (W.D. La. 2016). However, Long and May have asserted the defense of qualified immunity from suit on all claims. See Record Documents 11 and 11-1. Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009). First, the court must determine whether the plaintiff demonstrated a genuine dispute of material fact as to a violation of a constitutional right. See Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009). Second, the court must determine whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. at 232, 129 S. Ct. at 816. If Long and May's actions were objectively reasonable in light

of clearly established law, then summary judgment must be granted. <u>See id.</u> at 244, 129 S. Ct. at 822 (the qualified immunity inquiry turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken").

The Court finds that Lester's arguments fail to overcome Long and May's qualified immunity defense. Lester in his Memorandum in Opposition to Defendants' Motion for Summary Judgment seeks to link Long and May with Turner concerning Turner's failure to correctly analyze La. Rev. Stat. § 14:133, failure to consider affirmative defenses under the Home Improvement Fraud Statute, failure to adequately consider exculpatory evidence even after the warrant was obtained but before the warrant was executed, and failure to verify and organize evidence in a way to assure that the evidence is valid. <u>See</u> Record Document 28 at 7-10. Although the Court analyzes motions for summary judgment and rule 12(b)(6) motions to dismiss under different standards, it should be noted that the Court in its Memorandum Ruling granted Turner's Rule 12(b)(6) Motion to Dismiss and held that Turner was objectively reasonable in his actions on all the above claims lodged against May and Long; thus, Turner was entitled to qualified immunity. <u>See</u> <u>Lester v. Prator</u>, 2017 U.S. Dist. LEXIS 169259 (W.D. La. 2017).

Similarly, the Court finds that Long and May's actions were objectively reasonable. Long and May each played a role in the investigation and eventual arrest of Lester; however, Turner's role was far greater. Turner initiated the investigation and drafted and signed the arrest affidavit that was signed by the Judge Brun. This Court found Turner's actions to be objectively reasonable. <u>See</u> <u>Lester v. Prator</u>, 2017 U.S. Dist. LEXIS 169259; <u>see</u> Record Document 28-2 at 11-14. Lester has failed to offer any evidence that would

raise a genuine dispute of material fact that Long and May violated his Fourth Amendment right against unreasonable searches and seizures. Long and May's actions were objectively reasonable as they assisted Turner in the investigation and arrest of Lester. The Memorandum in Opposition to Defendants' Motion for Summary Judgment simply rehashes the arguments this Court has already considered and ruled on in Turner's Rule 12(b)(6) Motion to Dismiss. Lester has not provided any evidence that would support a contrary ruling. Accordingly, the malicious prosecution claim against Long and May should be dismissed.

### iv.  Lester's Civil Conspiracy Claim Against Long and May

As an alternative theory to Lester's claim that Long and May, in concert with Turner, committed some negligent error in organizing the evidence to obtain an arrest warrant for Lester on the home improvement fraud charge, Lester further claims that Turner, Long, May, and Prator conspired to deprive Lester of his constitutional rights "not to be deprived of liberty without due process of law [and] not to be illegally seized and detained." Record Document 1 at 23-24, ¶ 78. Specifically, Lester claims that "Defendants acted in concert to fabricate or obtain by suggestive means the statement of Timothy Weaver" and that "the information in [Weaver's letter describing the work performed on Mrs. Broadway's attic at 5704 McAlpine St.] was false along with the photographs of the attic that the Sheriff Defendants submitted in their report." Id. at 24, ¶ 79. Lester alleges that Turner, Long, May, and Prator were motivated to fabricate this evidence by "a disliking or hateful discriminatory attitude toward . . . African-American persons." Id. at 24, ¶ 80. The Court rejects this argument. This analysis will only concern Long and May as

the civil conspiracy claim against Prator was dismissed in Section II, B, I, *supra* based on a supervisory liability analysis.

The defense of qualified immunity is available to state officials accused of wrongdoing under 42 U.S.C. § 1985(3). <u>McKee v. Lang</u>, 393 F. App'x 235, 238 (5th Cir. 2010). Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. <u>See</u> <u>Club Retro LLC v. Hilton</u>, 568 F.3d 181, 194 (5th Cir. 2009). Lester argues in his Memorandum in Opposition to Turner's Motion to Dismiss the same points in his Memorandum in Opposition to the present Defendants' Motion for Summary Judgment. Lester asserts that with the assistance of Long, May, and Prator, Turner was incompetent in interpreting La. Rev. Stat. § 14:133, incompetent in ignoring the affirmative defenses within the Home Improvement Fraud Statute, and incompetent in organizing the evidence. This Court found Turner's actions as well as Long and May's actions objectively reasonable. A conclusory assertion that a law enforcement officer's misinterpretation of statutes and mistakes in assembling evidence for an arrest warrant constitute incompetence. which is not covered under qualified immunity, without more, is not enough to satisfy this burden. Lester simply repeats the argument this Court has rejected in <u>Lester v. Prator</u>, 2017 U.S. Dist. LEXIS 169259 (W.D. La. 2017) rather than offer evidence as to why qualified immunity should not apply. Accordingly, Lester fails to meet his burden of demonstrating the inapplicability of the qualified immunity defense as it pertains to his Section 1985(3).

However, assuming *arguendo*, that Lester is able to overcome Long and May's qualified immunity defense, Lester fails to offer evidence that would entitle him to relief under 42 U.S.C. § 1985(3). To succeed on a claim under 42 U.S.C. § 1985(3), a plaintiff

must allege: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." Hilliard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994). Thus, "the plaintiff must show the conspiracy was motivated by a class-based animus." Id. at 653.

After viewing the record as a whole and construing the facts in the light most favorable to Lester, Lester has failed to produce any evidence of an agreement between Long, May, and Turner to deny Lester and others the equal protection of the law. Lester attempts to raise a genuine issue of material fact as it pertains to his civil conspiracy claim by introducing various news articles that the Court has reviewed extensively. See Record Document 28-2 at 43-63. However, the articles fail to raise genuine disputes of material facts as to Lester's claim of civil conspiracy against Long and May. Along with the news articles, Lester bases his civil conspiracy theory on a review of the property by Tim Thomas of Thomas Construction. See Record Document 1 at 11-12, ¶40; see also Record Document 28-2 at 58-59. Thomas asserts that Lester's work was not defective and complied with building standards. Nonetheless, Thomas' review of the property (obtained at the behest of Lester) is not enough to raise a genuine dispute of material fact that Long, May, and Turner acted in concert or agreed to deprive Lester and other African-Americans of their Fourth Amendment right against unreasonable searches and seizures. After extensively reviewing the record, all the Court is able to identify is mere speculation by Lester.

Lester has also failed to offer any evidence that would raise a genuine issue of material fact that the alleged conspiracy was motivated by class-based animus, i.e., disliking African-Americans. The undisputed fact that Lester was arrested with six other African American contractors and inspectors, see Record Document 1 at 9, ¶ 34, is not enough to show that racial considerations motivated the Defendants' conduct. See Derischebourg v. Clark, No. 15-CV-1712, 2016 WL 98617, at *8 (E.D. La. Jan. 8, 2016) (The factual assertion by the plaintiff that he is an African-American is insufficient to establish a U.S.C. § 1985 civil conspiracy claim). In Ducksworth v. Rook, the court held that the plaintiff may be an African American, and he may have been harassed and beaten by police officers. However, the previous premise did not equate to the conclusion that he was harassed and beaten by police officers *because* he was an African-American. No. 14-CV-146-KS-MTP, 2015 WL 3796065, at *4 (S.D. Miss. June 18, 2015), aff'd, 647 F. App'x 383 (5th Cir. 2016). The record is entirely devoid of any specific substantiated factual allegations that racial considerations motivated Long, May, and Turner's conduct. See Hamilton v. Serv. King Auto Repairs, 437 F. App'x 328, 329 (5th Cir. 2011) (unsubstantiated and conclusory claims of racial discrimination under 42 U.S.C. §§1985 and 1986 lacked merit). Accordingly, this Court finds that Lester's civil conspiracy claim against Long and May should be dismissed.

### C.  Lester's State Constitutional claims against Long, May, and Prator

As stated in Section I, D, *supra*, government officials' protection under Louisiana's law of qualified immunity is essentially identical to the protection afforded by federal law. See Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So. 2d 1081, 1091-95 (La. 1990). Thus, qualified immunity protects Long and May from suit as to Lester's state

constitutional claims to the extent they are based on acts protected by qualified immunity. See Moresi, 567 So. 2d at 1093 (The same factors that compelled the United States Supreme Court to recognize a qualified immunity for state officers under § 1983 require the [Louisiana Supreme Court] to recognize a similar immunity for them under any action arising under the state constitution). As explained in Section II, B, iii, *supra*, Long and May are protected by qualified immunity for their actions in the investigation and arrest of Lester. Thus, because qualified immunity protects Long and May from suit on the basis of these actions under federal law and supervisory liability does not attach to Prator, all of Lester's state constitutional claims must be dismissed.

### D. Lester's State Law IIED and NIED claims against Long, May, and Prator

Lester's complaint fails to overcome the heightened standard required to be successful on IIED and NIED claims. To recover for IIED, "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1022 (La. 2000). The Louisiana Supreme Court in White v. Monsanto Co. stated:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991) (quoting Restatement (Second) of Torts § 46 (1965)). Furthermore, the court in Nicholas determined that it was not enough that a defendant acted with an intent which was tortious or even criminal in order to prove that the conduct was extreme and outrageous. 765 So. 2d at 1022.

Long, May, and Prator's conduct throughout the criminal investigation, arrest, and eventual dismissal of Lester's criminal charges was reasonable rather than extreme and outrageous. The factual allegations contained in Lester's Memorandum in Opposition to Defendants' Motion for Summary Judgment viewed in the light most favorable to Lester are conclusory allegations and unsubstantiated assertions. See Record Document 28 at 15; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."). Lester has failed to offer any evidence to the contrary. Accordingly, Lester is unable to meet the heightened standard required to succeed on a claim for IIED; thus, Lester's IIED claim must be dismissed.

In the alternative, Lester attempts to state a claim against Long, May, and Prator for NIED. To state a cause of action for NIED, there must be proof that the defendant violated some legal duty owed to the plaintiff. Haith v. City of Shreveport,, No. 03-CV-2128, 2005 WL 2140583, at *6 (W.D. La. Sept. 1, 2005).The plaintiff must also meet the heavy burden of proving outrageous conduct by the defendant. Id. at *6.

As indicated *supra*, Lester has not pled facts or offered evidence to show that Long, May, or Prator's conduct was outrageous. In fact, in Lester's Memorandum in Opposition

to Defendants' Motion for Summary Judgment, Lester failed to address the NIED claim lodged against Long, May, and Prator. See Record Document 28. Moreover, Lester's negligence claim is undermined because the Court earlier found Long and May's conduct reasonable. See Roten v. City of Minden, No. 16-CV-0381, 2017 WL 1398655, at *8 (W.D. La. Apr. 18, 2017) ("The focus of the qualified immunity inquiry is reasonableness. By finding the actions of Engi and Young to be reasonable under the qualified immunity analysis, Roten's state law negligence claims are undermined."). Therefore, Lester's NIED claim must be dismissed.

### E. Lester's State Law Defamation Claim for Slander and Libel against Prator

Lester's defamation claim against Sheriff Prator concerns statements made by Prator on August 31, 2009, and July 4, 2014. The August 31, 2009 statement has prescribed. In Louisiana, prescription commences to run from the day injury or damage is sustained. La. Civ. Code art. 3492; see Doughty v. Cummings, 44-812 (La. App. 2 Cir. 12/30/09), 28 So. 3d 580, 583, writ denied, 2010-0251 (La. 4/9/10), 31 So. 3d 39. On August 31, 2009, Prator made the alleged defamatory statement in a press conference announcing a $1.5 million scandal to rip off the city of Shreveport involving Lester and other African-American contractors and inspectors. See Record Document 1 at 9, ¶ 35. The instant action was initiated July 2, 2015. Therefore, Lester's defamation action based on this statement has prescribed.

However, Lester argues that the continuing violation doctrine applies to the present case. Lester claims that Prator defamed him on August 31, 2009, June 21, 2012, and July 4, 2014; therefore, Lester argues these alleged acts of defamation should be accumulated. However, this argument lacks merit. The continuing violation doctrine

applies to hostile work environment claims rather than Section 1983 claims. See Record Document 28 at 13. Furthermore, in Louisiana, in order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage. See Thomas v. State Employees Grp. Benefits Program, 2005-0392 (La. App. 1 Cir. 3/24/06), 934 So. 2d 753, 758. The pleadings and evidence offered by Lester are remiss with allegations of continuous action and continuous damage by Prator.

The July 4, 2014 statements made to *The Inquisitor* remains actionable, as it has not prescribed. According to *The Inquisitor* article Prator stated:

> I'm very disappointed. I'm very disheartened. Once again, these cases of public corruption are not getting prosecuted. Here we have old and disabled people that are being taken advantage of along with the taxpayers who are funding it, and every case is being dropped. Next month, it will be five years since these arrests were made. The case of theft and the abuse of this old lady had already been dropped. Don't get confused about this. The real thing is that this family has been taken advantage of, and nobody has paid for it except the taxpayers. And that's because of a lack of prosecution.

Record Document 28-2 at 62.

A plaintiff initiating a defamation action bears an extremely heavy burden in order to withstand a motion for summary judgment. Bell v. Rogers, 29-757 (La. App. 2 Cir. 8/20/97), 698 So.2d 749, 753 (citations omitted). Courts generally err on the side of conducting trials on the merits when issues of material fact are asserted in other types of cases, but defamation claims are inordinately susceptible to summary adjudication due to constitutional considerations involved in such actions. Id. at 753 (citation omitted). If a defendant's motion for summary judgment is supported by documents that are facially adequate to refute the essential elements of a particular defamation claim, then the plaintiff must affirmatively produce evidence of sufficient quality and quantity to demonstrate that she likely will be able to bear her burden of proof a trial. Id. In defamation

actions, a plaintiff opposing a motion for summary judgment bears a more onerous burden than a plaintiff in other actions and must demonstrate that she can produce sufficient evidence at trial to prove the elements with convincing clarity. Id. at 754 (citation omitted). In order to be successful in a defamation action, a plaintiff must establish four essential elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Kennedy v. Sheriff of E. Baton Rouge, 2005-1418 (La. 7/10/06), 935 So.2d 669, 674.

In Louisiana, qualified privilege is a defense to a defamation action. See Trentecosta v. Beck, 96-2388 (La. 10/21/97), 703 So.2d 552, 564. However, Prator is not entitled to such privilege because Prator's statements to *The Inquisitor* were made post investigation/arrest and after the charges were ultimately dropped. See Trentecosta, 703 So.2d at 564 (Law enforcement officers should be allowed to report the fact of a criminal investigation and an arrest without fear of a defamation action if a person is later cleared of such charges, but an officer cannot add additional injurious statements that the officer had no reason to believe were true. The additional statements exceed the scope of the privilege.). However, as discussed infra, Prator reasonably believed his statements to be true. Accordingly, the Court finds that Prator is entitled to the defense of qualified privilege as to his statements made after the prosecution ended.

However assuming *arguendo* that Prator is not entitled to the defense of qualified privilege, the Court will now analyze whether Lester has raised a genuine issue of material fact as to the four defamation elements in order to survive the present Motion for Summary Judgment. As to the first element, "[w]hether a particular statement is

objectively capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener." Bell, 698 So.2d at 754 (citing Kosmitis v. Bailey, 28-585 (La. App. 2 Cir. 12/20/96), 685 So.2d 1177, 1180) (citations omitted). "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory *per se*." Costello v. Hardy, 2003-1146 (La. 1/21/04), 864 So.2d 129, 140. Once a plaintiff proves that a defendant's words are defamatory *per se*, the elements of falsity, malice, and injury are presumed. See id. at 140. In the present action, Prator's statements that "these cases of public corruption are not being prosecuted" and "the real thing is that this family has been taken advantage of, and nobody has paid for it except the taxpayers . . . [due] to a lack of prosecution" implicitly accuses Lester of criminal conduct. In fact, the Defendants in their Supplemental Memorandum even admit that the statements are potentially defamatory. See Record Document 67 at 2. Therefore, the Court will treat Prator's statements to *The Inquisitor* defamatory *per se*.

As to fault, the third element, a stricter standard applies.[2] In cases involving statements made about a public figure or a matter of public concern, a plaintiff must prove actual malice. Bell, 698 So.2d at 754; see generally Romero v. Thomson Newspapers (Wisconsin), Inc., 94-1105 (La. 1/17/95), 648 So.2d 866, 869. The present action is clearly a matter of public concern because it relates to contractor/construction crime in the Shreveport Bossier area that was directed at the elderly and disadvantaged. The scheme

---

[2] The Court has determined that Lester has failed to offer evidence to rebut the second and fourth elements in the present Motion for Summary Judgment.

also involved public funds as the Office of Community Development (a government agency) granted contracts to these local contractors to repair disadvantaged persons' homes. Furthermore, the media attention the controversy attained justifies this finding as seen from Lester's own exhibits. Accordingly, Lester must show actual malice. Actual malice is whether the defendant either knew the statement was false or acted with reckless disregard of the truth. Bell, 698 So.2d at 754. However, since the Court treats Prator's comment to *The Inquisitor* as defamatory *per se*, Prator bears the burden of rebutting the fault element, which he has done. See id. ("When the plaintiff proves publication of words which are defamatory per se, the elements of falsity and malice are presumed, but may be rebutted by the defendant."). Even assuming that Prator is not entitled to the defense of qualified privilege, Lester has failed to raise a genuine issue of material fact as to fault. Prator in his sworn affidavit states that "[he] did not make any knowingly false statement[s] regarding what other law enforcement officers had reported regarding Mr. Lester." Record Document 13-4 at 1, ¶ 2. Prator's statements to *The Inquisitor* may have been negligent; however, the statements were not reckless or knowingly false. In making such statements to *The Inquisitor*, he relied on the investigative reports, which a magistrate judge determined established probable cause to arrest Lester. Therefore, Prator had a reasonable basis for making such statements. Moreover, the fact that the charges were dropped because the Caddo Parish District Attorney's Office decided not to further prosecute Lester does not equate to Lester's innocence. Assuming *arguendo* that the photographs discussed supra were indicative of innocence, Lester has failed to offer evidence that shows Prator was aware of such photographs. In fact, in his affidavit, Prator testified that "[he] was only generally aware of

the investigation and prosecution of James Lester." Record Document 13-4 at 1, ¶ 2. Therefore, the Court finds that Lester has failed to affirmatively produce competent summary judgment evidence that demonstrates he will be able to satisfy his burden of proof at trial. See Bell, 698 So.2d at 753 ([P]laintiff must affirmatively produce evidence of sufficient quality and quantity to demonstrate that she likely will be able to bear her burden of proof a trial.). Accordingly, Lester's state law defamation claims against Prator must be dismissed.

## CONCLUSION

Sheriff Prator, Lieutenant Long, and Sergeant May's Rule 56 Motion for Summary Judgment (Record Document 13) is **GRANTED.** All of Lester's claims against Prator, Long, and May are hereby **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 27th day of December, 2017.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT